IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CURTIS LAMONT BROWN,**

    Plaintiff,

v.

**J. POND, D. MILLER,** and **THE UNITED STATES OF AMERICA,**

    Defendants.

No. 3:17-cv-01434-MO

OPINION AND ORDER

**MOSMAN, J.,**

This case comes before me on Defendants' Motion to Dismiss [32]. For the following reasons, I GRANT the Motion to Dismiss. Plaintiff's claims against Defendants Pond and Miller are dismissed with prejudice, and Plaintiff's claims against the United States are dismissed without prejudice.

## BACKGROUND

Plaintiff Curtis Lamont Brown is currently incarcerated in the custody of the United States and located at the Federal Correctional Institution, Sheridan ("FCI Sheridan"). Brown has

filed a *Bivens* action against Defendants Darrell Miller, a corrections officer at FCI Sheridan, Jennifer Pond, a certified nursing assistant at FCI Sheridan, in their individual capacities. Brown has also filed claims against the United States as the employer of Pond and Miller. Brown alleges that over several years Pond misdiagnosed his eye disease, resulting in pain and the eventual loss of his eye.

Brown also alleges that as Miller was transporting Brown from a hospital visit back to FCI Sheridan, Miller walked Brown across wet grass when Brown was wearing ankle shackles, handcuffs, a black-box restraint device on his hands, and slide sandals. As Brown entered the transport van, he nearly slipped on the steps up. Entering behind Brown, Miller fell and landed on Brown's shackled wrists. Brown informed Miller that his wrists hurt, but Miller did not remove the shackles or black-box during the ride back to FCI Sheridan. Upon returning to FCI Sheridan, Miller took Brown to receive medical attention for his wrist. Brown alleges that Miller's fall onto his wrists damaged cartilage and ligaments, required surgery, and causes him pain and continued discomfort.

Brown filed informal and formal grievances regarding his eye and Miller's fall onto Brown's wrists. Brown exhausted his administrative remedies for both injuries, then filed this suit, which Defendants have moved to dismiss.

## LEGAL STANDARD

A motion to dismiss will be granted when, viewing the facts in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A court ruling on a Rule 12(b)(6) motion accepts as true all well-pleaded allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*, 550 U.S. at 555. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Review of a 12(b)(6) motion is limited to the contents of the complaint. *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). Courts may also "consider 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).

"*Bivens* established that compensable injury [by federal officials] to a constitutionally protected interest could be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts[.]" *Butz v. Economou*, 438 U.S. 478, 486 (1978). To bring a *Bivens* claim, a plaintiff must allege that the defendants are (1) federal agents, (2) who violated plaintiff's constitutional rights, (3) while acting under the color of federal law. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1999).

## DISCUSSION

Brown brings six claims. The first claim is against Pond for deliberate indifference to Brown's medical needs in violation of the Eighth Amendment. Brown's second and third claims are against Miller for use of excessive force and deliberate indifference. Brown brings negligence and vicarious liability claims against the United States for Miller's decision to walk Brown across wet grass and for Miller falling on Brown's wrist. Brown also bring claims against the United States for negligent training and direct liability for not training Miller to walk

along designated paths when transporting inmates, and a claim for medical negligence for Pond's misdiagnosis of Brown's eye disease.

I. Claim 1 – Pond's Deliberate Indifference

42 U.S.C. § 233(a) "grants absolute immunity to Public Health Service (PHS) officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). "By its terms, § 233(a) limits recovery for such conduct to suits against the United States." *Id.* The immunity provided by § 233(a) precludes *Bivens* actions against individual PHS officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment. *See id* at 812–13.

Defendants argue that the language of § 233(a) of the Public Health Service Act precludes any liability in a *Bivens* action for PHS officers sued for "actions arising out of the performance of medical or related functions within their scope of employment." Mot. to Dismiss [32] at 10. *Hui v. Castaneda*, 599 U.S. 799, 805–06 (2010). Because Pond was a PHS officer acting within the scope of her employment when she treated and diagnosed Brown, she has absolute immunity from this *Bivens* action.

Brown alleges that Pond acted outside the scope of her employment, and therefore should not be eligible for immunity. But this argument fails because if Pond was not a federal agent acting within the scope of her employment, she is no longer subject to a *Bivens* claim. For these reasons, I grant Defendants' Motion to Dismiss on Brown's first claim against Pond.

II.  Claims 2 and 3 Against Miller

Brown alleges two Eighth Amendment claims against Defendant Miller, both arising from Miller transporting Brown. In Claim 2, Brown alleges that Miller used excessive force in double locking his handcuffs. In Claim 3, Brown advances two theories: deliberate indifference in not removing or adjusting Brown's handcuffs during transport, and deliberate indifference in walking Brown across wet grass.

A. Claim 2 – Miller's Excessive Force in Double Locking Handcuffs

Brown's second claim has two fatal defects. First, Brown has not alleged the sort of excessive force courts find to be a violation of the Eighth Amendment. Second, Brown has not exhausted this claim.

1. Failure to Allege Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). "A plaintiff cannot prove an Eighth Amendment violation without showing that force was employed 'maliciously and sadistically' for the purpose of causing harm." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 796 (9th Cir. 2018).

Brown alleges that Miller used excessive force in double locking Brown's handcuffs, but argues that the technique of double locking was excessive, not that the application of the handcuffs was forceful in any manner. Defendants explain that the double-lock technique is Federal Bureau of Prisons (BOP) policy, that BOP practice and training is to use double-lock restraints, and that the BOP form authorizing Brown's transport on the day in question required BOP staff to use full restraints for the duration of Brown's trip to and from the hospital.

Additionally, Brown has not alleged that the handcuffs were applied "maliciously and sadistically" or for the purpose of causing harm. While I do not deny that harm may have been caused, showing harm with no allegations of intent fails to meet the required burden. The cases Brown relies on in making his claim of excessive force all involve situations in which excessive force was used in the application of handcuffs or steps leading to handcuffing, not the tightness of the handcuffing itself. Brown did not allege intentional tightening or application of handcuffs in the manner courts have found to be a violation of the Eighth Amendment.

2. Administrative Exhaustion

Brown has not fully exhausted his administrative remedies on this claim. The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies on federal claims before bringing them in a lawsuit. *See* 42 U.S.C. § 1997e(a). Brown first accused Miller of intentionally tightening the handcuffs in his Response to Defendants' Motion to Dismiss. Brown has not raised this issue in any of the administrative complaints he filed with the BOP. One administrative complaint was about the misdiagnosis of Brown's eye, another was about Miller slipping and falling on Brown's wrists. Because Brown never made a complaint about the alleged intentional tightening, he has not exhausted his administrative remedies. Due to the failure to exhaust and the pleading failure, I grant Defendants' Motion to Dismiss on Brown's second claim.

    B. <u>Claim 3 – Miller's Deliberate Indifference in Not Adjusting or Removing Handcuffs</u>

To show deliberate indifference in violation of the Eighth Amendment, an inmate must show (1) there was a risk of an "objectively, sufficiently serious harm," and (2) the official was subjectively aware and had a "sufficiently culpable state of mind" in denying access to proper

medical care. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th. Cir. 1995)). In the prison context, the Eighth Amendment's prohibition on cruel and unusual punishment prevents government officials from acting with deliberate indifference to a prisoner's health, safety, or serious medical needs. *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In some cases, it may be important to balance the "competing tensions" between "the prisoners' need for medical attention and the government's need to maintain order and discipline," in determining the prison officials' subjective intent. *Clement*, 298 F.3d at 905 n.4.

In Brown's Amended Complaint, he alleges that once his wrists began to hurt on the drive back to FCI Sheridan, he repeatedly informed Miller of the pain he was in and Miller ignored his pleas. According to the medial record of the injury, Miller took Brown to receive medical attention upon returning to FCI Sheridan.

Even viewing the facts alleged in the light most favorable to Brown, he has failed to allege that Miller denied him access to medical care or that Miller had a culpable state of mind in doing so. The facts as alleged indicate that Miller got Brown medical attention as quickly as possible. Brown argues that handcuffing him was excessive and unnecessary because he was tired, was complying with orders, and posed no safety risk, and not removing the handcuffs was deliberate indifference. But Brown offers no support for his contention that Miller had the authority to make this decision. Miller was following BOP protocol in the method in which he restrained Brown. Because Brown has failed to show that Miller exhibited deliberate indifference in not adjusting or removing the handcuffs, I grant Defendants' Motion to Dismiss Brown's third claim as it pertains to not removing or adjusting Brown's handcuffs.

C. <u>Claim 3 – Miller's Deliberate Indifference in Ignoring a Hazardous Condition</u>

In the Eighth Amendment context, an official may be liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Frost v. Agnos*, 152 F.3d 1124, 1128–29 (9th Cir. 1998).

Brown's claim fails to meet the pleading requirements for two reasons. First, walking across wet grass is not an excessive risk to inmate health or safety. No official should reasonably expect that walking across wet grass could result in serious harm to an inmate.

Second, Brown was not injured by the hazard he has complained of in his pleading. Brown alleges that Miller knew of and disregarded the serious danger posed by the wet grass. Brown argues that the wet grass was an excessive risk because he had limited mobility as he was shackled and in sandals. Brown's argument about any danger due to his limited mobility is irrelevant, however, as Brown was not injured by falling. Brown was instead injured by Miller falling as Miller entered the van. Finally, Brown has not alleged that Miller's fall was anything more than an accident. Miller slipped, accidentally, fell on Brown, and injured Brown's wrist.

Brown has failed to meet the pleading standards for his argument as alleged. Walking across wet grass does not constitute a substantial risk of serious harm and falling is simply an accident. Therefore, I find that Brown has not stated a claim upon which relief can be granted, and I grant Defendants' Motion to Dismiss Brown's third claim as it pertains to walking across wet grass.

III.  Claims 4, 5, & 6 – Claims Against the United States

Defendants move for dismissal on all claims against the United States because Brown did not file his Complaint within the statutorily required period. The Federal Tort Claims Act

(FTCA) requires a claimant to initiate any tort claim against the United States within six months of receiving notice of final denial of an administrative agency claim. 28 U.S.C.A. § 2401(b).

Brown filed two administrative claims with the Bureau of Prisons (BOP), one for injury to his wrists causde by Miller's fall, and one for damage to his eye due to Pond's misdiagnosis. The claim for Brown's wrist injury was denied on May 18, 2016, and the claim for Brown's eye was denied on January 5, 2017. Brown filed his Complaint with this Court on September 11, 2017—fifteen months after the denial of his first claim and eight months after the denial of his second claim. Both claims therefore fall outside of the six-month period required by the FTCA.

Brown believes that he filed more claims than are currently available on the record. Because I find that Brown's current complaints against the United States are time barred, I GRANT Defendants' Motion to Dismiss as to the claims against the United States, but do so without prejudice to allow Brown leave to replead. Brown may file an amended complaint within thirty days of this Order.

## CONCLUSION

For the aforementioned reasons, I GRANT Defendant's Motion to Dismiss [32]. Plaintiff's claims against Defendants Pond and Miller are dismissed with prejudice, and Plaintiff's claims against the United States are dismissed without prejudice.

IT IS SO ORDERED.

DATED this 13 day of March, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge